# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| LYNN M. JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CASE NO. 1:12-cv-02669 |
| ) | |
| LOGISTICS & TECHNOLOGY ) | |
| SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment. (Doc. 23). The defendant has also submitted a brief (doc. 24) and evidence (docs. 25-27) in support of its motion. The plaintiff has submitted a response and brief in opposition to the motion (docs. 29 & 30), to which the defendant thereafter filed a reply (doc. 31).

## I. PROCEDURAL HISTORY

The plaintiff commenced this action by filing a complaint, which was later amended (docs. 1 and 9),[1] alleging that the defendant discriminated against her pursuant to the Family Medical Leave Act ("FMLA") (Count One),[2] and that she suffered retaliation after filing a charge with the Equal Employment Opportunity Commission ("EEOC") (Count Two). (Doc. 9). Upon

---

[1]References herein to "Doc. ___" are to the electronic document numbers assigned by the Clerk of the Court to each document, which are located at the top of the document.

[2]This claim asserts that the plaintiff was "harassed because of her disability." (Doc. 9 (Amended Complaint) at ¶ 17). Although the plaintiff's original complaint styled Count I as "Discrimination under the Americans with Disabilities Act," her amended complaint removed the cause of action under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, in favor of the FMLA claim. In her response to the defendant's motion for summary judgment, the plaintiff asserts she has brought an ADA claim as well as an FMLA claim and a Title VII retaliation claim. (Doc. 30, at 8).

completion of discovery, the defendant filed its motion for summary judgment. (Doc. 23). The parties have consented to the jurisdiction of the undersigned under 28 U.S.C. § 636. They also have had a full opportunity to address the issues presented. Having considered the pleadings and arguments of the parties, as well as the relevant law, the court finds that the motion for summary judgment is due to be granted.

## II. FACTUAL BACKGROUND

The plaintiff was hired by the defendant as a Production Cleaner on June 23, 2008. (Doc. 24, ¶ 10).[3] This job entailed the cleaning and maintenance of military vehicles at the Anniston Army Depot. (Doc. 24, ¶ 4). The plaintiff's Shift Supervisors were Kelia Garrett (3rd Shift) and Brenda Oliver (1st Shift). (Doc. 24, ¶ 5; Plaintiff Dep. at 188[4]). The Site Manager, to whom the plaintiff directly reported, was Daniel Deese at the time of her hire. He was later replaced by Carl Howard. (Doc. 24, ¶¶ 6 and 7).

On October 23, 2008, the plaintiff suffered an on-the-job injury to her shoulder when she slipped and fell while cleaning a tank. (Doc. 24, ¶ 23; Plaintiff Dep. at 204). Because her shoulder was not healing, the plaintiff had surgery on February 17, 2009, to repair her torn rotator cuff. (*Id.*, ¶¶ 26-27). Due to complications, she underwent a second surgery on May 14, 2009. (*Id.*, ¶ 33).

The plaintiff was off work due to her injury and surgeries from February 18, 2009, until July 17, 2009, when her doctor released her to "office work only." (Doc. 24, ¶ 35; Def. Exh. 1-

---

[3]The court has cited to the defendant's "Undisputed Facts" where the plaintiff has agreed to the same. (See Doc. 24).

[4]The plaintiff's deposition was submitted as defendant's exhibit 1 to document 25. It is identified as document 25-1 in the court's electronic record.

DX 15 (Doc. 25-15)).  Because no such job was available, the plaintiff did not immediately

return to work.  (Doc. 24, ¶ 36; Plaintiff Dep. at 214).  On August 19, 2009, the defendant

provided the plaintiff's physician with the job description for "Quality, Safety and Environment

Inspector Assistant" ("QSE").  (Doc. 24, ¶¶ 39-40).  The plaintiff's doctor approved her ability to

perform the QSE job duties and released the plaintiff to work as of August 20, 2009.[5]  (*Id.*, ¶ 41;

Def. Ex. 1- DX 20 (Doc. 25-20)).  The plaintiff asserts she was given a made up job to

accommodate her, but the job duties were not what the defendant represented to her doctor.

(Plaintiff Dep. at 57-58, 78).  On September 16, 2009, the defendant retroactively approved the

plaintiff's FMLA leave request.  (Doc. 24, ¶ 43; Plaintiff Dep. at 127-128).

The plaintiff returned to work on third shift, supervised by Garrett, but transferred to first

shift effective November 2, 2009.  (Def. Exh. 1- DX14 (Doc. 25-14)).  The plaintiff alleges that

after her transfer to first shift, Brenda Oliver, her supervisor, harassed her.  (Doc. 24, ¶ 51;

Plaintiff Dep. at 151).

In February 2010, the plaintiff complained to Carl Howard about Ms. Oliver's behavior

toward her, which she described as "intimidating and threatening."  (Doc. 24, ¶ 54; Def. Exh. 1-

DX 22 (Doc. 25-22)).  The plaintiff's complaints with Oliver centered around Oliver talking

loudly, pointing her long fingernails at the plaintiff, and making the plaintiff tell her when the

plaintiff was taking bathroom breaks.  (Plaintiff Dep. at 55-56, 66, 69-70; *see also* Def. Exh. 2-F

(Doc. 27-2) at 62.  Ms. Oliver claimed that she had issues with the plaintiff's work performance.

---

[5]The plaintiff was paid Temporary Total Disability benefits through August 28, 2009.  (*See* Def.
Exh. 1-0 DX 4 (doc. 26-2) at 45).  She also received TTD benefits from September 12, 2009, through
September 25, 2009.  (*Id.* (doc. 26-5) at 27).  Because of her return to work on August 24, 2009, the
plaintiff received a notice that she owed $2,098.10, in workers' compensation overpayment.  (*Id*. (doc.
26-7) at 33).

(Doc. 24, ¶ 56).  Thus, Howard attempted to resolve the plaintiff and Oliver's differences through a teleconference (*id.*, ¶ 57), after which the plaintiff signed a statement that the issues were resolved.  (Def. Exh. 1- DX 23 (Doc. 25-23)).  The plaintiff was specifically informed that while Human Resources would protect her from harassment based on race, color, origin, gender, military status and religion, they could not do anything about employees gossiping.  (Def. Exh. 2-F to Hale Declaration (Doc. 27-2) at 68).  The plaintiff conceded that her issues with Oliver were in the nature of a "personality clash," and thereafter, the plaintiff did not complain to Howard, or anyone else with defendant, again.  (Doc. 24, ¶ 62-63; Plaintiff Dep. at 45).  However, the plaintiff also asserts that nothing changed after the meeting with Howard and Oliver.  (Plaintiff Dep. at 65-66, 258-259).

The plaintiff was aware that, for security reasons, cameras were prohibited at the Depot.  (Doc. 24, ¶¶ 19-22; Plaintiff Dep. at 192).  On April 14, 2010, two digital cameras were found in the plaintiff's car by guards at the main gate, and the plaintiff was told she could not enter the Depot.  (Doc. 24, ¶ 66; Plaintiff Dep. at 225).  The plaintiff was given the option of either taking the cameras home or leaving them at the gate.  (Plaintiff Dep. at 227).  The plaintiff called Carolyn Roberts, Human Resources Assistant, and told her she had to take her cameras home, then would return to work.  (*Id.* at 228).  The Army prepared a report of this incident (def. exh. 1- DX 25 (doc. 25-25)), and upon defendant's receipt of this report on April 22, 2010, the plaintiff was terminated.  (Plaintiff Dep. at 229-230).  The discharge form states that in addition to knowingly bringing prohibited items onto a military installation, the plaintiff further violated company policy requiring employees to inform the defendant of security violations.  (Def. Exh. 1- DX 4 (doc. 26-1) at 1-2).

The plaintiff asserts her termination was really in retaliation for filing an EEOC charge and for pursuing workers' compensation issues.  (Doc. 24, ¶ 70).  However, Carl Howard had no knowledge of the plaintiff's EEOC activity at the time he made the decision to terminate her employment.  (Declaration of Carl Howard (Def. Exh. 3 (Doc. 27-3)) at ¶ 18).  He also did not know of her claim of disability nor did her consider her to be disabled.  (*Id.*, ¶ 19).

Plaintiff asserts her only disability is her shoulder injury, and further claims that her injury was the cause of the discrimination against her.  (Plaintiff Dep. at 106-07).  The plaintiff also asserts the defendant retaliated against her when she hired a lawyer to pursue her workers' compensation claim.  (*Id.* at 241).

The plaintiff completed an EEOC Intake Questionnaire on October 9, 2009, claiming she was "being mistreated due to the fact that I hired a lawyer due to my on the job injury."  (Def. Exh. 1- DX 4 (doc. 26-2) at 15).  The plaintiff continued that not finding her light work immediately, denying her leave requests, and taking disciplinary action against her for talking to a co-worker were forms of harassment by her employer.  (*Id.* at 15-16).  The plaintiff never told anyone at work about this charge.  (Plaintiff Dep. at 55).  Her complaints were that she was not given an office job, and that her supervisor continued to harass her about using the bathroom and not doing her job.  (Plaintiff Dep. at 150-51).

The plaintiff completed another EEOC Intake Questionnaire on September 16, 2010, asserting that she was denied leave several times in August 2009, that she was falsely accused of talking to a co-worker in September 2009, and that she was told the defendant had no light duty work in August 2009, when other employees received light duty work.  (Def. Exh. 1- DX 4 (doc. 26-1) at 25-28).  The plaintiff further claims that after she hired an attorney due to her injury,

defendant "began retaliating."  (*Id.* at 26).  The plaintiff filed a Charge of Discrimination on December 2, 2010, claiming disability discrimination, harassment, and that she was terminated as a pretext for discrimination because she filed a complaint of harassment.  (Def. Exh. 1- DX 26 (Doc. 25-26) at 22).  She claimed discrimination based on her employer perceiving her as having a disability due to her on the job injury.  (*Id.*)

According to EEOC records, the defendant was not notified about the first charge of discrimination until March 8, 2011, when the EEOC located the first charge in the course of investigating the second charge, due to an "administrative error."  (Def. Exh. 1- DX 26 (Doc. 25-26) at 9, 11).  Because of the EEOC's error, the EEOC deemed the plaintiff's charge timely filed as of October 13, 2009.  (Def. Exh. 1- DX 26 (Doc. 255-26) at 55-56, 59-60).  The EEOC records reflect that the defendant was first notified of the plaintiff's second charge October 1, 2010.  (Def. Exh. 1- DX 26 (Doc. 25-26) at 18).

### III. STANDARD OF REVIEW

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* FEDERAL RULE OF CIVIL PROCEDURE 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  An issue is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  *Allen v. Tyson Foods, Inc*., 121 F.3d 642, 646 (11th Cir. 1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See*

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S. Ct. 1598, 1609 (1970).  The party moving

for summary judgment "always bears the initial responsibility of informing the district court of

the basis for its motion," relying on submissions "which it believes demonstrate the absence of a

genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548

(1986).  Once met by the moving party, however, the burden shifts to the non-moving party to

come forward with evidence to establish each element essential to that party's case sufficient to

sustain a jury verdict.  *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990)

  Both the party "asserting that a fact cannot be," and a party asserting that a fact is

genuinely disputed, must support their assertions by "citing to particular parts of materials in the

record," or by "showing that the materials cited do not establish the absence or presence of a

genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

FED. R. CIV. P. 56(c)(1)(A) & (B).  Acceptable materials under Rule 56(c)(1)(A) include

"depositions, documents, electronically stored information, affidavits or declarations, stipulations

..., admissions, interrogatory answers, or other materials."  In other words, a party opposing a

properly submitted motion for summary judgment may not rest upon mere allegations or denials

of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial.

*Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990).  In addition, the non-moving party's

evidence on rebuttal must be significantly probative and not based on mere assertion or be merely

colorable.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511

(1986).  Speculation does not create a genuine issue of fact.  *Cordoba v. Dillard's, Inc.*, 419 F.3d

1169, 1181 (11th Cir. 2005).

## IV.  DISCUSSION

Due to the plaintiff's paucity of pleading, the defendant briefed each claim the plaintiff conceivably could have made.  In her response to the defendant's motion for summary judgment, the plaintiff fails to address any of these specific arguments, opting instead for generalized statements devoid of legal citations.  Erring on the side of caution, the court has analyzed each of the claims identified by the defendant, those being disability and retaliation under the ADA; FMLA discrimination, interference and retaliation under the FMLA; and discrimination and retaliation in violation of Title VII.

**A.**     **ADA Discrimination Based on the Defendant's Failure to Provide the Plaintiff a Light Duty Job**

The ADA provides that no covered employer shall discriminate against a "qualified individual on the basis of a disability in regard to job application procedures, hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To establish a prima facie case of discrimination under the ADA, the plaintiff must show that (1) she has, or is regarded as having, a disability; (2) she is a "qualified" individual;[6] and (3) she was discriminated against because of her disability." *Carruthers v. BSA Advertising, Inc*., 357 F.3d 1213, 1215 (11th Cir. 2004) (quoting *Williams v. Motorola, Inc*., 303 F.3d 1284, 1290 (11th Cir. 2002)).

Because the plaintiff asserts her employer "regarded her" as having a disability, she must establish "she has been subjected to an action prohibited under this chapter because of an actual

---

[6]A qualified individual is one who is able to perform the essential functions of the employment position she holds with or without reasonable accommodations.  *Davis v. Florida Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000) (citing 42 U.S.C. § 12111(8)).

or perceived physical or mental impairment whether or not the impairment limits or is perceived

to limit a major life activity."[7]  42 U.S.C. § 12102(3)(A).  Under this standard, "a plaintiff need

demonstrate only that the employer regarded [her] as being impaired, not that the employer

believed the impairment prevented the plaintiff from performing a major life activity." *Wolfe v.*

*Postmaster Gen.*, 488 F. App'x 465, 468 (11th Cir. 2012).

      The defendant disputes that the plaintiff's shoulder injury constitutes a "disability" as that

term is defined by the statute.  In her response, the plaintiff avoids the issue altogether, asserting

only that:

> [t]here is no question that the Plaintiff suffered injury while working for
> defendant.  The defendant had a problem giving or finding light duty work for the
> plaintiff.  After Plaintiff's injury, she was told that the defendant did not have
> light duty work on the depot...

(Doc. 30 at 9).  Setting aside that the ADA does not contain any requirement that an employer

create a job where none exists,[8] the defendant here in fact created a light duty job specific to the

plaintiff's limitations – that of QSE.[9]  (See e.g. Declaration of Howard (Def. Exh. 3 (Doc. 27-3)

at ¶ 6).  Even assuming the plaintiff could establish that her shoulder injury qualifies as a

disability under the ADA, or that the defendant "regarded her" as disabled for purposes of the

---

[7]Major changes to the ADA were enacted by Congress by adoption of the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), Pub.L. No. 110–325, 122 Stat. 3553 (2008), effective Jan. 1, 2009.  Because all of the alleged discriminatory conduct in plaintiff's complaint occurred after the ADAAA's effective date, the court applies the post-ADAAA version of the ADA.  *See e.g., Mazzeo v. Color Resolutions Intern., LLC*, 746 F.3d 1264, 1267 (11th Cir. 2014).

[8]*See e.g, Howell v. Michelin Tire Corp.*, 860 F. Supp.1488, 1492 (M.D. Ala. 1994) ("Reasonable accommodation, however, does not require that an employer create a light-duty position or a new permanent position.").

[9]The plaintiff testified that she could perform light duty work, and her problem with the QSE position the defendant created for her was that the defendant added additional duties to the job as described for her doctor.  (Plaintiff Dep. at 243).

ADA, all of the evidence before the court demonstrates that the defendant provided her with job accommodations.[10]  Thus the court finds plaintiff's claim that defendant discriminated against her by not providing her with a light duty job fails as all of the evidence shows otherwise.  The plaintiff has provided nothing to dispute this.

**B.     ADA Retaliation – Plaintiff's Termination**

The plaintiff's entire argument in response to defendant's motion for summary judgment on her ADA retaliation claim is that:

> The above referenced facts raise a material issue regarding whether the defendant's conduct toward the plaintiff and eventual termination of the plaintiff were not in retaliation toward the plaintiff.  Plaintiff has been discriminated against in her treatment at the work site because the defendant was unwilling to make accommodations that were necessary for the plaintiff after she sustained an on the job injury.  The defendant's conduct violated the Americans with Disabilities Act of 1990, as amended and the defendant retaliated against plaintiff because plaintiff filed complaints for harassment by her supervisors.

(Doc. 30 at 10).

Assuming, as the defendant did, that the plaintiff is alleging her termination was in retaliation for claiming a disability, the court has considered whether the plaintiff can establish a retaliation claim under the ADA.[11]  To state a prima facie claim for ADA retaliation, a plaintiff

---

[10]The plaintiff does not dispute this.  (Compare Doc. 24 at ¶¶ 39-43 with Doc. 30 at ¶¶ 39-43

[11]In her response to the defendant's motion for summary judgment, the plaintiff intermingles discrimination, retaliation for EEOC activity and retaliation for pursuing her workers' compensation rights.  Because the latter is outside the purview of this court, this opinion considers only the former two allegations.  The plaintiff's deposition testimony adds no clarity to her claims.  She testified, in relevant part, as follows:

Q. – any disability other than your shoulder?
A. Unh-unh (negative response).
Q. Okay.
A. I'm saying that's the reason they retaliated against me.
Q. Actually, that's what I want to make sure I understand.  In – in the lawsuit, are you

must show: (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment decision; and (3) that there is some causal relationship between the protected activity and the adverse action. *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997). To establish a causal connection, "a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated." *Shannon v. BellSouth Telecomm., Inc.,* 292 F.3d 712, 716 (11th Cir. 2002).

Once the plaintiff establishes a prima facie case, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the adverse action. *Crawford v. City of Fairbum*, 482 F.3d 1305, 1308 (11th Cir. 2007). If the employer articulates such a reason for its treatment of the plaintiff, then the burden returns to the plaintiff to produce evidence sufficient to raise a genuine issue of material fact with regard to whether the employer's proffered reason for the adverse action was pretextual. *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1103-04

---

claiming that they were discriminating against you because you had a disability?
A. I felt like it, yes.
Q. Are you claiming they were – what  – you – you said retaliation. What – what do you think they were retaliating against you as a result of?
A. Because I had to end up contacting an attorney.
Q. Okay.
A. – And filing this EEOC. That's when I started having a lot of problems, more problems then.
Q. When you contacted the attorney?
A. Um-hum (positive response).
Q. Who did you tell that you had contacted an attorney?
A. I don't remember. I don't really remember. I think it was in the letter.
Q. And I know – I know – and we'll look. I know there was a letter where you wrote saying he was representing you in a workers' comp?
A. Un-hum (positive response).
Q. Did you – you ever say that he was  – he was representing you with regards to harassment or discrimination?
A. No. Just workmen's comp.

(Plaintiff Dep. at 107-08).

(11th Cir. 2001).

The court can find no support for the plaintiff's assertion that contacting an attorney to pursue a workers' compensation claim is protected activity for purposes of the ADA.[12]  However, the plaintiff also makes passing reference to her 2009 EEOC claim, which is protected activity for a retaliation claim.  The plaintiff asserts that the defendant had notice of this claim in February 2010 because in her grievance letter to Carl Howard she included the following: "I would like to inform you that a copy of this letter and attachments have been forwarded to "Brad Proctor, Attorney at Law," Linda Ross, EEOC Rep., Birmingham, Al," and "Rev. Freddy Rimpsey, Black Caucus President."  (Def. Exh. 1- DX 22 (Doc. 25-22)).  Assuming the plaintiff's February 2010 letter to Howard provided notice of her protected activity, the same necessarily means that Brenda Oliver's treatment of the plaintiff prior to February 2010, could not be the result of an intent to retaliate because of the plaintiff's protected activity.

The plaintiff has provided no legal basis for this court to conclude that the mere inclusion of a notation within a grievance letter to a supervisor – that the same was forwarded to an EEOC representative – suffices to establish that an employer was aware of the plaintiff's protected activity.  However, because the court views the evidence and all factual inferences therefore in the light most favorable to the plaintiff, the court assumes the plaintiff could establish a causal connection.  *See e.g, Clover v. Total System Services, Inc*., 176 F.3d 1346, 1354 (11th Cir. 1999) (quoting *Goldsmith v. City of Atmore*, 996 F.2d 1115, 1163 (11th Cir. 1993) ("[A] plaintiff must

---

[12]Pursuing workers' compensation rights is protected activity under Alabama law. ALA. CODE § 25-5-11.1 ("No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits...").  However, any such claim is not before this court.  The plaintiff's state court workers' compensation action was settled and the settlement entered as a court order on July 22, 2011.  (Def. Exh. 1-17).

generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action. The defendant's awareness of the protected statement, however, may be established by circumstantial evidence.").

Carl Howard, who made the decision to terminate the plaintiff, stated by affidavit that at the time he made that decision he was unaware of the plaintiff's EEOC claim or any other claim of discrimination or disability.  (Def. Exh. 3 at ¶¶ 19-20).  In addition to claiming no knowledge of the plaintiff's EEOC activity at the time of her termination, the defendant offers the plaintiff's violation of company rules, in bringing digital cameras to a secure miliary facility, and her failure to report the same, as legitimate, non-discriminatory reasons for her termination.  (Def. Memo. (Doc.  24) at 24).  The plaintiff does not dispute that she violated company rules, and breached security at an army depot, by having digital cameras in her car.  Rather, she asserts her termination for this violation of company policy was pretextual and the real reason was retaliation, because others who brought prohibited items to work were not terminated.  A plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Brooks v. County Com'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation omitted).  Either way, "[i]f the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.... Quarreling with that reason is not sufficient." *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1088 (11th Cir. 2004) (citation omitted); *see also Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1278 (11th Cir. 2008) ("It is the plaintiff's burden not merely to raise a suspicion regarding an improper motive, but rather to demonstrate there is a genuine issue of material fact

13

that the employer's proffered reason for [the adverse employment action] was pretextual.").  "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1024–25 (11th Cir. 2000) (en banc).

As stated, the plaintiff does not dispute that she arrived for work with prohibited items in her car.  Rather, she alleges that the fact the Army closed its case against her on the same date as her offense "raises a material issue as to what the true reason for the Plaintiff's termination." (Plaintiff's Response (Doc. 30) at 9).  The plaintiff provides no further argument, or explanation, as to how the Army's decision to take no further action against her could cast doubt on her employer's decision to terminate her for violation of Depot policy.  In order to meet her burden, the plaintiff must "meet the reason head on and rebut it." *Chapman*, 229 F.3d at 1030.  Here, rather than rebut the reason for her termination, the plaintiff admits that she engaged in the very violation alleged.  She  has not presented any evidence that she was really terminated because she referenced in a letter to Howard about Oliver that she was providing a copy of the same to the EEOC.  Moreover, her argument that the same is evidence of Howard's knowledge is insufficient to rebut Howard's testimony that he had no knowledge of her EEOC claim.  The court finds that the plaintiff has not shown any evidence tending to support that the defendant's articulated reason for plaintiff's termination is pretextual and/or that the real reason for the termination was retaliation.  Temporal proximity alone is insufficient to establish a causal connection in the absence of actual knowledge by Howard.  *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010).

The defendant is therefore entitled to summary judgment in its favor on the plaintiff's claims under the ADA.

## C.        FMLA Interference and Retaliation Claims

In her amended complaint, the plaintiff claims she was subjected to "discrimination" under the FMLA.  The defendant, while recognizing that no such claim exists, provided the court with argument and analysis as to both FMLA interference and retaliation claims.[13]  (Def. Mem. (Doc. 24) at 27).  In her response, the plaintiff's only mention of the FMLA is a statement that her "claims are brought under the ... Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*." (Pl. Res. (Doc. 30) at 8).  The plaintiff provides no more of a hint as to what rights under the FMLA she claims the defendant abridged, or how.  Clearly, the plaintiff has abandoned any claim under the FMLA.  *See, e.g., Wilkerson v. Grinnell Corp*., 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995) ("We decline to exercise our discretion to entertain this argument which was not fairly presented to the district court."); *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned).  Even if these claims had not been abandoned, the defendant is entitled to summary judgment for the following reasons.

Any interference claim the plaintiff attempts to bring is without merit, as there is no

---

[13]The FMLA "creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act."  *Hurlbert v. St. Mary's Health Care Sys., Inc*., 439 F.3d 1286, 1293 (11th Cir. 2006) (internal quotation marks omitted).

evidence before the court, in testimony or otherwise, that the plaintiff did not receive everything to which she was entitled in the way of leave.

As to any claim of retaliation under the FMLA the plaintiff has attempted to bring, the court again applies the familiar *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework established by the United States Supreme Court for evaluating Title VII discrimination claims.  The plaintiff "must allege that: (1) [she] engaged in a statutorily protected activity; (2) [she] suffered an adverse employment decision; and (3) the decision was causally related to the protected activity." *Strickland v. Water Works and Sewer Brd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001) (citing *Parris v. Miami Herald Publ'g Co.*, 216 F.3d 1298, 1301 (11th Cir. 2000)).  The evidence before the court fails to establish a prima facie case of FMLA retaliation because no evidence of a causal connection between her termination and her request for FMLA leave has been presented.  The plaintiff began leave due to her shoulder injury in February 2009.  She returned to work in August 2009.  Although she received workers' compensation benefits for that entire period of time, the plaintiff completed the FMLA paperwork and her employer approved the same in September 2009.  She was terminated in April 2010.

Recently, in *Jarvela v. Crete Carrier Corp.*, in considering an FMLA retaliation claim, the Eleventh Circuit held that mere temporal proximity, in the face of unrebutted evidence that the decision maker was unaware of protected activity, is insufficient to establish a causal connection between such activity and an adverse employment action. *Id.*, 754 F.3d 1283, 1290 (11th Cir. 2014).  Moreover, the gap of time between the plaintiff exercising her rights under the FMLA and her termination is too remote to establish causation based solely on "mere temporal

16

proximity, without more...." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).  In *Thomas*, the Eleventh Circuit stated that a three-to-four-month disparity between the protected activity and the adverse employment action was not sufficient without other evidence tending to show causation.  506 F.3d at 1364.  Since the plaintiff has offered no other basis to find her termination was a result of her FMLA request, the court is of the opinion summary judgment is due to be granted in favor of the defendant and against the plaintiff on any FMLA claim in the plaintiff's amended complaint.

**D.      Title VII Claim for Retaliation**

In her response to the defendant's motion for summary judgment, the plaintiff asserts a claim for "retaliation under Title VII of the 'Civil Rights Act of 1964.' "  (Plaintiff's Res. (Doc. 30) at 8).  The plaintiff further alleges in her response that "the defendant retaliated against plaintiff because [she] filed complaints for harassment by her supervisors."  (*Id.* at 10). However, nothing in the plaintiff's complaint of harassment by Brenda Oliver addresses any harassment based on any protected activity, attribute or classification.  Rather, the plaintiff complains of Oliver's loud voice and long fingernails.  Such complaints are not within the realm of "protected activity" as that term has been defined.

As the same standard is applied to retaliation claims under the ADA, the FMLA and Title VII, the court has considered whether the evidence could support a Title VII claim even if it is insufficient for an ADA retaliation claim.  *See e.g., Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002) ("It is well established in this circuit that to successfully allege a prima facie retaliation claim under either Title VII, the ADEA or the ADA ..." the same burden shifting

standard is applied.).  However, more stringently than the ADA, Title VII retaliation claims require proof that the desire to retaliate was the "but-for cause of the challenged employment action."  *University of Tex. Southwestern Med. Ctr. v. Nassar*, ___U.S.___, 133 S. Ct. 2517, 2528, 186 L. Ed. 2d 503 (2013).  As explained above, the court finds the plaintiff has failed to establish a prima facie case of retaliation under any of the statutes she mentions in her complaint, amended complaint, and response to the defendant's motion for summary judgment.

The defendant is therefore due summary judgment in its favor on any Title VII claim the plaintiff attempted to or intended to bring.

## V. CONCLUSION

In consideration of the foregoing, having found no genuine issues of material fact remain in this case and that summary judgment in favor of the defendant and against the plaintiff is due to be granted on all counts of the plaintiff's amended complaint, the court shall enter an appropriate order.

**DONE** this the 27th day of August, 2014.

John E. Ott

**JOHN E. OTT**
Chief United States Magistrate Judge